## Hilgert v. Fish

*David Katz*, for plaintiffs.
*Michael P. Shay*, for defendant.

WILLIAMS, *J.*, June 28, 1978—In this trespass action by plaintiffs, Tommy Hilgert and his wife, Penny Hilgert, brought against defendant, Ronald Wilson Fish, to recover damages resulting from the collision of a motorcycle operated by Tommy Hilgert and a motor vehicle operated by defendant, counsel for defendant served 36 written interrogatories upon Tommy Hilgert. Counsel for plaintiffs filed 31 objections, but subsequently withdrew

17, leaving 14 objections—to interrogatories nos. 8 . . ., 21—to be ruled upon by the court.

At the outset, we note that the burden of demonstrating an exemption from the duty to answer rests upon the objecting party: Holowis, Admx. v. Philadelphia Electric Co., 38 D. & C. 2d 260 (1966); Uniform Land of Oxford Valley v. Pennsylvania National Mutual Cas. Ins. Co., 72 D. & C. 2d 718, 720 (1976); Tataren v. Little, 2 D. & C. 3d 651, 656 (1977); and Smith v. SEPTA, 3 D. & C. 3d 476 (1977).

*Interrogatory no. 8 reads:* "State the *diagnosis* or *prognosis* given by the person treating you, setting forth an appropriate portion of any *written report* made to you or a person acting in your behalf which reflects such diagnosis or prognosis." (Emphasis supplied.)

We do not think that this question is unreasonable, causing a greater measure of annoyance— Pa.R.C.P. 4011(b)—or investigative effort— Pa.R.C.P. 4011(e)—than that which is the ordinary and usual concomitant of discovery in the conduct of litigation: McCrary v. Kennedy Memorial Hospital, 1 D. & C. 3d 443, 447 (1977). Here, defendant does not already have—as did the interrogating plaintiff in Edney v. Sharon General Hospital, 54 D. & C. 2d 504, 12 Mercer 1 (1972)—the substance of the information which he now seeks through this question. Further, the question is not excessively broad, as was apparent in Brownstein v. Philadelphia Transportation Co., 46 D. & C. 2d 463 (1969), cited by counsel for plaintiff, and in Bleznak v. Mason, 2 D. & C. 3d 515 (1977). Whatever right plaintiff may have had to object on the ground of doctor-patient privilege—Pa.R.C.P. 4011(c)—was waived by plaintiff when he instituted this action to

recover for his personal injuries: Keville v. Manchio, 2 D. & C. 3d 105 (1977). The decision of Automobile Banking Corp. v. Hadden, 40 D. &C. 2d 544, 15 Chester 6 (1966), cited by counsel for plaintiff, relates to the attorney-client privilege and to the privilege against self-incrimination. It is not on point.

Counsel also asserts that the question violates Pa.R.C.P. 4011(f), proscribing any discovery which "would require a deponent, whether or not a party, to give an *opinion* as an expert witness, *over his objection.*" (Emphasis supplied.) The short answer to this is that the doctors who gave the diagnosis and prognosis in question already have done so *without* objection. Absent any objection by the expert witness himself, plaintiff has no standing to object to the discovery of opinions so given: Fraley v. Penna. Gas & Water Co. et al. (No. 3), 54 Luz. 189, 194 (1964); Alinkoff v. McDonald, 33 D. & C. 2d 715, 718 (1964); Hall et al. v. Sall et ux., 86 Montg. 53, 56 (1965); Wexler v. Roberts, 85 Montg. 133, 135 (1965): Edney v. Sharon General Hospital, 54 D. & C. 2d 504, 12 Mercer 1 (1972). Clause (f) was added, effective April 2, 1962, to Pa.R.C.P. 4011. It has been construed as carrying forward and clarifying a principle already established by judicial decision: Pennsylvania Company, etc. v. Philadelphia, 262 Pa. 439, 441-442, 105 Atl. 630 (1918); and Evans v. Otis Elevator Co., 403 Pa. 13, 27, 28, 168 A. 2d 573, 580 (1961). See: Kozlowski v. O'Brien, 28 D. & C. 2d 742, 744 (1963); Swotes v. Rechtman, 46 D. & C. 2d 283, 286 (1969). In Pennsylvania Company, supra, Mr. Justice Simpson said:

" . . . The process of the courts may always be invoked to require witnesses to appear and testify to

any *facts* within their knowledge; but no private litigant has a right to ask them to go beyond that. The State or the United States may call upon her citizens to testify as *experts* in matters affecting the common weal, but that is because of the duty which the citizen owes to his government, and is an exercise of its sovereign power. So, also, where the State or the United States, in her sovereign capacity, charges the citizen with crime, she may, if need be, lend her power in that regard to the accused, for she is vitally interested, as such sovereign, that public justice shall be vindicated within her borders. Perhaps, under like circumstances, she may also lend her power in civil cases. But *the private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained."* (Emphasis supplied.)

Counsel assert (plaintiff's brief, page 4; page 6), that to direct plaintiff to answer, stating what his doctors told plaintiff concerning the diagnosis and prognosis of his condition, would permit defendant to circumvent clause (f) by obtaining indirectly from plaintiff that which he *might* not be able to obtain through a question addressed directly to the doctors, *if* the doctors claimed their privilege under clause (f) and refused to answer. In support, counsel for plaintiff cite Miller v. Perrige (No. 2), 71 D. & C. 2d 481, 483 (1975). This was a malpractice suit where it was essential for plaintiff to obtain expert medical opinion concerning recognized standards of diagnosis and treatment in order to demonstrate that defendant doctor, by deviating, subjected himself to liability. Defendant requested

plaintiff to answer and state what knowledge of these matters she had received from her experts. Plaintiff objected upon the twin grounds of clause (d) and clause (f). In sustaining the objection, the court chose to rest its determination, not on clause (d)—a seemingly plausible ground—but upon clause (f). Apparently, the court was moved by the circumstance that an answer to the question by plaintiff, rather than by her doctor-witnesses, would be *hearsay* and therefore inadmissible in evidence. Judge Moser said:

"In Glenn v. Holy Redeemer Hospital [No. 72-00051, Montgomery County, May 30, 1973], supra, the court aptly holds that: 'Accepting the agreed fact that the plaintiff, Eleanor A. Glenn, is a lay person and mother of the minor plaintiff, Alfred Delio, Jr., answers to such questions (the contentions of negligence of the complaint) by her would be pure hearsay and necessarily invade the field of medical opinion and expertise which is prohibited by Rule 4011(f) of the Pennsylvania Rules of Civil Procedure.' "

On the contrary, we think that information, useful in preparation for trial, is discoverable notwithstanding that it may be inadmissible in evidence when the case reaches the trial stage. It is true that Pa.R.C.P. 4011(c)(2), as originally adopted on November 20, 1950, 365 Pa. XIiii, provided: "No discovery or inspection shall be permitted which . . . would disclose facts . . . which . . . (2) are not competent or admissible in evidence," but this restriction was deleted from the rule as amended on April 12, 1954, 376 Pa. lxxxix. See: Gagliardi v. Tozzi, 44 D. & C. 2d 492, 494 (1968). Accordingly, we find this objection to be without merit.

Finally, counsel for plaintiff assert that the question violates the proscription of Pa.R.C.P. 4011(d) against discovery of "reports, memoranda, statements, information or other things made or secured . . . in anticipation of litigation or in preparation for trial . . . other than information as to the identity or whereabouts of witnesses." While defendant is entitled to such material developed in the routine course of plaintiff's treatment for his injuries, he is not entitled to material specifically obtained in preparation for litigation. The difficult problem is to mark the point in time and circumstance where Tommy Hilgert, patient, became Tommy Hilgert, patient-litigant. See: Lumbermens Merchandising Corporation v. Insurance Company of North America, 43 D. & C. 2d 715, 718, 719 (1968). Since this determination is not feasible upon the present record, we will defer ruling until the parties have had an opportunity to develop the necessary factual background in depositions taken for that purpose.

• • •

Interrogatory no. 21 reads: "State the names and addresses of any persons not referred to in the preceding interrogatories who you believe have *or may have* any knowledge or information pertaining to the *circumstances* of the incident giving rise to this suit." (Emphasis supplied.) The novel feature of this question is that it calls, not only for the names and addresses of witnesses known to plaintiff, but also for names and addresses of *potential witnesses* who plaintiff believes *may have* pertinent information. The process of making an investigation in anticipation of litigation comprises three steps: (1) locating potential witnesses; (2) interviewing the candidate to determine whether or not he is a

witness; and (3) if the candidate is a witness, obtaining from him a statement. The final work product of step 3 is protected from disclosure by Pa.R.C.P. 4011(d). Here, defendant is asking plaintiff to share with him the product of incomplete investigation represented by step 1. The question asks only the names and addresses of potential witnesses already known to plaintiff; it does not require him to make a new search for presently unknown potential witnesses. The latter would constitute an unreasonable investigation contrary to Pa.R.C.P. 4011(e) and be tantamount to compelling plaintiff to conduct his adversary's investigation for him: Bleznak v. Mason, 2 D. & C. 3d 515, 521 (1977); Luken v. Entine, 65 D. & C. 2d 100, 103 (1974). Of course, the question may induce plaintiff to "check out" his leads, but it is not unreasonable to expect plaintiff to complete his own investigation.

The question defines the group of persons whose names and addresses are requested by a series of limitations. First, the question is limited to persons presently known to plaintiff. Second, it is further limited to such ones of those persons who have or may have knowledge "pertaining to the *circumstances* of the incident giving rise to this suit." (Emphasis supplied). In Venito v. Pennsylvania Railroad Co., 10 Chester 237, 247 (1960), an otherwise comparable question was addressed, not only to the present knowledge of the interrogee, but also to that of any person acting in his behalf. The court directed that an answer be given to the question " . . . [W]hat are the names and addresses of all persons known or believed by defendant or any person acting in defendant's behalf to have first-hand

knowledge of the facts and circumstances of the accident or of the events leading up to or following it." Judge Harvey and President Judge MacElree (specially presiding) said:

" . . . [S]ince the identity and whereabouts of witnesses are specifically excluded from the protection of Rule 4011, defendant is directed to answer to the extent of disclosing the identity and whereabouts of witnesses to the accident. Witnesses shall include eyewitnesses, as well as persons who have direct knowledge of relevant facts and *circumstances* of the accident or of events leading up to it or following it." (Emphasis supplied.)

In Brownstein v. Philadelphia Transportation Co., 46 D. & C. 2d 463, 464 (1969), the court sought to distinguish Venito and sustained objections to a question requesting the names and addresses of all persons known to defendant, defendant's attorney, and any of defendant's representatives, " '"who have any knowledge of any of the facts of this accident, the surrounding circumstances, the plaintiff's injuries and/or the plaintiff's damages resulting therefrom.' " Judge McDevitt said:

" . . . The inquiry is so broad that we may conclude that it would cause defendant unreasonable annoyance and oppression to answer it. Even were we to limit the inquiry to the names and addresses of 'persons who have direct knowledge of relevant facts and circumstances of the accident or of the events leading up to it or following it' (as was done in Venito [10 Chester 237 (1960)], supra, at pp. 246-7), defendant would be hard put to say which 'circumstances,' etc., are 'relevant.' We are fully aware that discovery of witnesses is exempted from

the prohibitions of Pennsylvania Rules of Civil Procedure 4011(d); however, the limitations of sections (b) and (e) of Rule 4011 apply to discovery of witnesses as well as to discovery of other information."

In Bleznak v. Mason, supra—an action in assumpsit and trespass to recover for unjust enrichment resulting from acts of fraud and misrepresentation allegedly perpetrated by defendants in obtaining certain loans from plaintiff—the court sustained an objection to one of plaintiff's interrogatories which read: "'State the names and addresses of all persons known to you or your representatives who have any knowledge concerning *the facts involved in this litigation.*'" (Emphasis supplied.) The court held that the question was not so broad as to require defendant to conduct plaintiff's investigation, but that it was too broad to enable defendant to identify readily the facts for which discovery was sought. Judge Takiff said (2 D. & C. 3d at p. 521, 522):

"In the present case, interrogatory no. 1 is limited to the identity of those persons 'known to you or your representatives.' Unlike Luken [Luken v. Entine, 65 Pa. D. & C. 2d 100 (1974)], therefore, which requested the identity of 'any person' without any limitation, interrogatory no. 1 is not objectionable on the ground that it would require defendant Palitz to search for persons not presently known and would, in effect, require him to do plaintiff's investigation.

"However, an interrogatory which seeks information concerning the 'facts involved in this litigation' is at least as broad as the interrogatories stricken in both Brownstein [Brownstein v. P.T.C.,

46 Pa. D. & C. 2d 463 (1969)], supra, and Luken, supra. Unlike a case which involves a single isolated event, the complaint here alleges a series of events over a period of time, including acts of knowledge, suspicion, fraud, misrepresentation, false pretenses and conspiracy. These allegations, when taken together, do not enable defendant Palitz to identify the 'facts involved' as to which discovery is sought and, accordingly, the prohibitions of Pa.R.C.P. 4011(b) and (e) necessitate that plaintiff specify more precisely the 'facts' to which he refers."

Here, the interrogatory is not so comprehensive as that in Bleznak ("facts involved in this litigation"), or in Brownstein ("facts of this accident, the surrounding circumstances, the plaintiff's injuries and/or the plaintiff's damages resulting therefrom"), but is more comparable to that in Venito ("the facts and circumstances of the accident or of the events leading up to or following it"). Accordingly, the objection to interrogatory no. 21 is overruled.

• • •

## ORDER

And now, June 28, 1978, it is ordered as follows:

• • •

2. Plaintiff's objections to interrogatory no. 21 is dismissed. Plaintiff will be required to answer.

• • •

5. Disposition of plaintiff's objection to interrogatory no. 8 is deferred. The parties are granted leave to take depositions for the purpose of determining how much of the requested material was obtained in preparation for trial.