# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 24, 2012 Session

## ESTATE OF CLYDE DEUEL v. THE SURGICAL CLINIC, PLLC

**Appeal from the Circuit Court for Davidson County**
**No. 07C2368      Joseph P. Binkley, Jr., Judge**

---

**No. M2011-02610-COA-R3-CV - Filed September 11, 2013**

---

A surgeon left a sponge in the abdomen of a patient, closing the incision after receiving assurances from two operating room nurses that all the surgical sponges used in the operation had been fully accounted for. A second surgery was required to remove the sponge from the patient's body. The patient died of unrelated causes seven months later. The patient's widow filed a medical malpractice complaint against the surgeon and argued that the evidence of negligence was so plain that she could be excused from the normal requirement of producing expert testimony to prove that medical malpractice had occurred. The defendant surgeon presented expert testimony during trial to prove that the surgical standard of care entitled him to rely on the accuracy of the sponge count provided by his nurses. The jury returned a verdict for the defendant surgeon. The plaintiff argues on appeal that the trial court committed reversible error by allowing the use of expert testimony in a case that is based on the common knowledge exception and *res ipsa loquitur*. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

H. Anthony Duncan, Nashville, Tennessee, for the appellant, Lorraine Deuel, individually and as Adm'x of the Estate of Clyde Deuel.

Clarence James Gideon, Heather Piper, Nashville, Tennessee, for the appellee, The Surgical Clinic, PLLC.

# OPINION

## I. A SURGICAL PROCEDURE AND A MALPRACTICE CLAIM

This is the second time these parties have appeared before this court. A thorough discussion of the facts leading to the plaintiff's claim can be found in our earlier opinion, *Deuel v. Surgical Clinic, PLLC,* M2009-01551-COA-R3-CV, 2010 WL 3237297 (Tenn. Ct. App. Aug. 16, 2010). We will briefly discuss those same facts and our first opinion dealing with them (hereinafter *Deuel 1*) in order to provide a sufficient understanding of the history of this case.

In August of 2006, Dr. Richard J. Geer performed surgery at St. Thomas Hospital to remove a pancreatic tumor from the abdomen of Mr. Clyde Deuel. Laparotomy sponges that were placed in Mr. Deuel's abdomen during the surgery were supposed to be removed before the incision was closed. Two nurses each counted the sponges twice to verify that the ones used during the operation had all been removed. After the count, the nurses told Dr. Geer that all the sponges were accounted for, and he closed the incision, completing the surgical procedure.

Two weeks later, Mr. Deuel began experiencing severe pain and other alarming symptoms. He went to the emergency room, where an X-ray and a CT scan showed a foreign body lodged in his abdomen. The foreign body was determined to be one of the laparotomy sponges. Dr. Geer performed another surgery to remove the retained sponge. Shortly thereafter, Mr. Deuel was diagnosed with cancer. He died in March of 2007.

Mr. Deuel's widow, Lorraine Deuel, filed a medical malpractice complaint on August 21, 2007, in her own name and as the administratrix of the estate of Clyde Deuel. She named Dr. Geer, the Surgical Clinic for which he worked, and St. Thomas Hospital as defendants.[1] Ms. Deuel claimed that because of the negligent retention of the sponge and the second surgery required to remove it, Mr. Deuel sustained injuries which included pain and suffering, mental anguish, and loss of capacity to enjoy life, and that she suffered loss of consortium.

Her complaint invoked two overlapping and closely-related theories: the "common knowledge" exception and the legal doctrine of *res ipsa loquitur* ("the thing speaks for itself"). *See Seavers v. Methodist Medical Center of Oak Ridge*, 9 S.W.3d 86 (Tenn. 1999); Tenn. Code Ann. § 29-26-115(c).

---

[1]Ms. Deuel later settled her claim against St. Thomas.

Dr. Geer filed a motion for summary judgment, accompanied by his own affidavit. He stated that by relying on the sponge count provided by the two nurses before closing the incision, he had complied with the applicable standard of care in his treatment of Mr. Deuel. He admitted that leaving a sponge in the body of a patient is negligent, but asserted that the negligence in this case could not be attributed to him either in whole or in part. Ms. Deuel did not produce an expert affidavit to rebut Dr. Geer's affidavit. After a hearing, the trial court granted Dr. Geer's motion for summary judgment.

Ms. Deuel appealed to this court. After a thorough examination of the particulars of her claim in the light of Tennessee statutory and case law, as well as cases from other jurisdictions, we reversed the trial court's grant of summary judgment to the defendant, Dr. Geer, and affirmed its denial of summary judgment to the plaintiff, Ms. Deuel, and remanded the case for trial.

## II. Substance of Prior Opinion

The outcome of this court's prior opinion in this case was a determination that summary judgment was not appropriate for either party and that the case should proceed to trial. The holdings leading to those conclusions are important to resolution of the issues raised in this appeal. Consequently, we will discuss the most relevant of those holdings in some detail.

With regard to the common knowledge exception (to the expert proof requirement), and, particularly Dr. Geer's argument that it did not apply in this case, the *Deuel I* court examined other cases involving the leaving of a sponge or instrument in a patient:

> The common knowledge exception has been applied under similar facts by a federal court applying Tennessee law and by at least one state court in another jurisdiction. *See Carver v. United States*, Nos. 3:04-0234, 3:04-0991, 2005 WL 2230025, at *9-10 (M.D.Tenn. Aug. 30, 2005); *Breaux v. Thurston*, 888 So.2d 1208, 1217 (Ala.2003). In these cases, each court found that summary judgment in favor of the defendant surgeon was not appropriate, despite expert testimony that the standard of care permitted the surgeon to rely on the nurses' count of sponges and surgical instruments. *Carver*, 2005 WL 2230025, at *9-10; *see Breaux*, 888 So.2d at 1217. This is consistent with statements by our Supreme Court, explaining that, "[i]n those cases wherein the acts ... complained of are within the ken of the common layman, the affidavit of medical experts **may be considered along with all other proof, but are not conclusive**." *Bowman v. Henard*, 547 S.W.2d 527, 531(Tenn.1977); *accord Seavers*, 9 S.W.3d at 92 (citing *Baldwin*, 569 S.W.2d at 456); *White v.*

-3-

*Vanderbilt Univ.*, 21 S.W.3d 215, 226 n. 11 (Tenn.Ct.App.1999) (citing *Ayers v. Rutherford Hosp.*, Inc., 689 S.W.2d 155, 160 (Tenn.Ct.App.1984)).

*Deuel*, 2010 WL 3237297, at *9 (emphasis added).

With regard to the applicability of the doctrine of res ipsa loquitur to this case, the court first noted that the doctrine is not a "substantive rule of negligence law," but, instead, is a "rule of circumstantial evidence," and that it is primarily used in jury trials "to provide a framework to determine whether the plaintiff's evidence is sufficient to entitle him to get his case to the jury." *Id.*, at *10 . The court further cited prior cases holding that the doctrine allows an inference of negligence, but it does not relieve the plaintiff of her burden of proof. *Id.*

In response to Dr. Geer's argument that the doctrine did not apply in this case, the court relied upon case law and, additionally, applied the statutory provision relevant to the doctrine in medical malpractice cases, Tenn. Code Ann. § 29-26-115(c),which creates an exception to the requirement of expert proof and which creates a **rebuttable presumption** that the defendant was negligent when certain circumstances were present. The court concluded that, under the circumstances of Ms. Deuel's claim, she had shown that the doctrine of res ipsa loquitur was applicable to the case. *Deuel*, 2010 WL 3237297, at *14.

In answering the question of whether a surgeon was entitled to rely upon expert evidence that the surgeon was not negligent in relying upon the nurses' sponge count in the absence of responsive expert proof from the plaintiff, the court examined a number of cases that held that "reliance on a sponge count does not, as a matter of law, relieve a doctor from liability for leaving a sponge in a patient." *Deuel*, 2010 WL 3237297, at *15 (citing *Tutton v. Patterson*, 714 S.W.2d 268 (Tenn.1986) (wherein the court "cited nearly a dozen cases" making that holding). The court also quoted from *Coleman v. Rice*, 706 So.2d 696, 699 (Miss.1997), "A surgeon leaving a sponge inside a patient is not negligent per se, but a presumption of negligence is raised, which the surgeon may attempt to rebut or explain." *Deuel*, 2010 WL 3237297, at *16. The court discussed *Breaux v. Thurston*, 888 So.2d 1208 (Ala.2003), in some detail and quoted with approval that court's reasoning. *Id.*

> Thus, the *Breaux* Court, much like the *Coleman* Court, determined that the retention of a foreign object in a surgical patient is **prima facie evidence** of the surgeon's negligence. If the surgeon presents **expert testimony** that reliance on the nurses' sponge and instrument count is in accordance with the standard of care and that the surgeon complied with the standard of care, "a jury question is presented" as to the surgeon's negligence, and his reliance on a nurse's count does not, as a matter of law, absolve the surgeon from liability. *Accord Burke*

-4-

*v. Wash. Hosp. Ctr.*, 475 F.2d 364, 365 (D.C.Cir.1973) ("Appellee [surgeon] attempted to shift responsibility for the injury [retained sponge] by asserting the nurse's sponge count was reported (obviously erroneously) as in order. While this may be enough to support shared liability on the part of the nurse's employer, [the hospital], it does not relieve the operating and supervising surgeon of his responsibility."); *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1200 (Ind.2008) ( "[A] surgeon may not escape his responsibility to remove sponges used during the surgery simply by delegating responsibility for tracking surgical sponges to attending nurses."); *Dolaway v. Urology Assocs. of Ne. N.Y.*, 897 N.Y. S.2d 776, 776 (N.Y.App.Div.2010) (holding that *res ipsa loquitur* was applicable when guide-wire left in surgical patient and that the defendants' proffer of expert testimony opining that there was no negligence did not "disqualify [the] case from consideration under *res ipsa loquitur*" but would "merely raise alternative inferences to be evaluated by the jury in determining liability." (quoting *Kambat v. St. Francis Hosp.*, 89 N.Y.2d 489, 497 (N.Y.1997)).

*Deuel*, 2010 WL 3237297, at \*17. (emphasis added).

Thus, this court determined, based upon the many authorities discussed therein, that Ms. Deuel was not required to submit expert testimony on Dr. Geer's negligence, in response to the expert evidence presented by the surgeon, in order to defeat the grant of summary judgment to Dr. Geer, but was entitled to a jury determination on the issue. *Id*., at \*18.

In considering Ms. Deuel's argument that she was entitled to summary judgment, the court noted that the fact that a defendant is not entitled to summary judgment "does not ergo mean that the Plaintiff is entitled to summary judgment." *Id*., at \*19. The court quoted with approval several authorities to the effect that while the doctrine of res ipsa loquitur may create an inference or rebuttable presumption of negligence, it is up to the jury to weigh all the evidence and decide whether the defendant has successfully rebutted the presumption. *Id*. The court concluded that Dr. Geer had indeed submitted sufficient evidence to rebut any presumption of negligence on his part and, therefore, Ms. Deuel was not entitled to summary judgment.

### III. JURY TRIAL AND VERDICT

Prior to trial, Dr. Geer identified three doctors and a nurse that he intended to call as expert witnesses at trial. *See* Tenn. R. Civ. P. 26.02(4). Ms. Deuel filed a pre-trial motion to strike all of the Rule 26 experts "because they will not substantially assist the jury in this common knowledge case." On September 17, 2011, the trial court conducted a lengthy

hearing on a number of pre-trial motions, which included vigorous argument about the propriety of the use of expert witnesses herein. The trial court denied Ms. Deuel's motion.[2]

The jury heard the testimony of Dr. Geer and Ms. Deuel, as well as the testimony of two of Dr. Geer's experts. One of them, Eric Lederman, M.D., a Missouri colorectal surgeon, testified that he had examined Mr. Deuel's medical record, and he described in detail some of the complexities involved in the type of abdominal operation performed by Dr. Geer, including the difficulty of being able to see and to work around all the delicate structures that are exposed when the abdomen is opened, without damaging structures that are not the target of the surgery.

Dr. Lederman also explained the functions of all the members of the operating room team, including the circulating nurse and the scrub nurse. He testified that it is the responsibility of the scrub nurse to lay out all the instruments and sponges that may be needed during the course of surgery within the sterile field, and to perform, with the circulating nurse, an initial count of those items prior to the beginning of the procedure. He also testified that at the conclusion of the procedure, the nurses count all the items that have been used and all those that remain unused to make sure that there is a match between the numbers of instruments, needles, and sponges in the initial count and the numbers of those items in the final count.

The witness testified that the professional standard of care applicable to surgeons requires the surgeon to make sure that the count has been performed and to close the patient's abdomen only after receiving confirmation from the nurses that every item has been accounted for.

Dr. Lederman was asked, "why wouldn't a surgeon perform a methodical search of the abdominal cavity even with this count to make sure that all the sponges have been removed?" He explained that a surgical sponge that has been soaked with blood or other fluids might be difficult to detect in the abdominal cavity and that it could be dangerous to probe the cavity in search of a sponge that might or might not be there. In response to other questions, Dr. Lederman stated that Dr. Geer complied with the standard of care by relying on the sponge count performed by both the scrub nurse and the circulating nurse, and that the sponge was left in Mr. Deuel's abdomen because of nursing error.

_____

[2]She then filed a Rule 9 motion for interlocutory appeal of the trial court's ruling, which the trial court likewise denied.

The defendant also called Patricia Purdom as an expert witness. Ms. Purdom is a registered nurse who had worked as both a circulating nurse and scrub nurse during more than ten years of service at St. Thomas hospital. Like Dr. Lederman, she testified about the duties of those nurses to provide, collect, and count the items used during a surgical procedure. She confirmed that the surgeon relies on the accuracy of their count prior to the closure of the surgical incision. She also testified that a surgeon has to focus his undivided attention on the surgical wound and, thus, has to rely on and trust the other members of the operating room staff in order to perform effectively. When he was called to the stand, Dr. Geer testified in detail about his treatment of Mr. Deuel and also about his understanding of the applicable standard of care.

Ms. Deuel renewed her objections to the testimony of the expert witnesses during trial, but the trial court overruled those objections. After about an hour of deliberation, the jury announced that it had reached a unanimous verdict for the defendant, Dr. Geer. The trial court entered a judgment on the verdict and dismissed Ms. Deuel's case with prejudice. Ms. Deuel then filed a motion for new trial, which the trial court denied. This appeal followed.

### IV. THE USE OF EXPERT TESTIMONY

The sole issue Ms. Deuel has presented for appeal in this case is "whether the trial court erred in allowing 'expert' testimony to be presented to the jury on matters of common knowledge?" The decision to admit or exclude the testimony of an expert witness normally lies within the discretion of the trial court. *Shipley v. Williams,* 350 S.W.3d 527, 552 (Tenn. 2011); *Roberts v. Bicknell*, 73 S.W.3d 106, 113 (Tenn. Ct. App. 2001) (citing *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997)). Such a decision will not be reversed on appeal unless a clear abuse of discretion is demonstrated. *Lewis ex rel. Lewis v. Brooks*, 66 S.W.3d 883, 886 (Tenn. Ct. App. 2001).

Ms. Deuel does not challenge the admissibility of a particular expert's testimony, but argues instead that the trial court (1) was not entitled to admit the testimony of **any** non-party expert witnesses in this case because her claim was based on a theory of common knowledge or *res ipsa loquitur*, and (2) this court had ruled that she herself was not obligated to present expert testimony to support her claim. The question then is, if she is not required to use expert testimony to assert her claim, does that bar the defendant from using such testimony to defend against it? Ms. Deuel has thus raised a question of law, which we must review *de novo*, with no presumption of correctness and without according any deference to the decision of the trial court. *Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008); *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Ms. Deuel relies on Tennessee Rule of Evidence 702, which governs the use of expert witnesses in the courts of this state. Rule 702 states that such witnesses may testify "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Ms. Deuel argues that, conversely, expert witnesses should not be allowed to testify if their specialized knowledge would not substantially assist the trier of fact. She insists that this case involves matters that lie within the common knowledge of jurors and, thus, that expert testimony should not have been admitted, "because such testimony, almost by definition, can be of no assistance to them."

We disagree. While it may be common knowledge that leaving a sponge in a patient is negligent, that is not the end of the inquiry. The question here is whether that negligence is necessarily attributed to the surgeon. As discussed above, the prior opinion in this case made it clear that Dr. Geer was entitled to present evidence that he did not breach any standard of care. Such evidence must, under Tennessee law, be presented by experts.

The post-surgical discovery of the sponge raises an inference or a presumption of negligence, which relieves the plaintiff of the need for expert testimony to prove that such negligence has occurred. However, Dr. Geer does not deny that negligence occurred in this case. He insists, rather, that he himself was not negligent, because he conducted the abdominal surgery at issue in full compliance with the professional standard of care for surgeons. Specifically, he provided expert testimony that in accordance with that standard of care, he relied on the scrub nurse and the circulating nurse for an accurate count of the instruments and sponges used in the operation and that he closed the abdominal incision only after they assured him that all those instruments and sponges were accounted for.[3]

Dr. Geer's expert, Dr. Lederman, gave extensive testimony about the standard of care for abdominal surgery and the reasons for that standard, matters that are not within the common knowledge of laypeople. Nor are non-experts competent to testify as to the standard of care. The practice of two nurses counting sponges before and after surgery to prevent the type of incident that occurred here is not commonly known to those outside the medical field. Ms. Deuel's attorney also questioned Dr. Lederman closely about whether

_____

[3]Ms. Deuel has offered as supplemental authority the case of *Tutton v. Patterson*, 714 S.W.2d 268 (Tenn. 1986), in which our Supreme Court observed, "Numerous cases have held that reliance on a sponge count does not, as a matter of law, relieve a doctor from liability for leaving a sponge in a patient." *Tutton v. Patterson*, 714 S.W.2d. at 270. The case before us does not involve relief of liability as a matter of law. However, neither does it involve assignment of liability as a matter of law. The jury heard evidence regarding Dr. Geer's negligence. He was relieved of liability in this case by the verdict of the jury. There was evidence in the *Tutton* case that the defendant deviated from the standard of care, and the jury in that case returned a verdict for the plaintiff, which was upheld by the Supreme Court.

Dr. Geer could have used other procedures to guarantee that no foreign object would be left behind in the patient's body, such as manually probing the surgical area or ordering an x-ray before closing the abdominal incision. Dr. Lederman explained that because of the size of the surgical area that is opened during abdominal surgery, the number of structures and organs that are exposed, and the need to maintain a sterile field at all times, such procedures would likely increase the patient's risks rather than reducing them. Again, those matters are not within the common knowledge of most people.

In our earlier opinion, we held that the presence of a retained object after surgery constituted *prima facie* evidence of negligence by the surgeon, but that it did not conclusively establish such negligence. Rather, it shifted the burden of proof to the surgeon to prove that he was not negligent because he complied with the relevant standard of care. Thus, Dr. Geer was entitled to use the testimony of an expert witness. Such expert testimony, even though unrebutted by expert testimony from Ms. Deuel, did not entitle the surgeon to summary judgment as a matter of law, but, instead, presented an issue of fact to be decided by the jury.

Several Tennessee cases have stated that expert testimony is not necessarily incompatible with the common knowledge exception or *res ipsa loquitur*. In *Bowman v. Henard,* 547 S.W.2d 527, 531 (Tenn. 1977) our Supreme Court explained that "[i]n those cases wherein the acts complained of are within the ken of the common layman, the affidavit of medical experts may be considered along with other proof, but are not conclusive." In a more recent case, the court declared that ". . . we believe the better rule is to allow expert testimony in medical malpractice cases, where otherwise admissible, to assist the parties both in establishing or rebutting the inference of negligence under a theory of *res ipsa loquitur*." *Seavers v. Methodist Medical Center of Oak Ridge*, 9 S.W.3d at 94.

Ms. Deuel notes that as both a party and as a licensed physician, Dr. Geer was himself entitled to testify about the applicable standard of care and that he did so. She contends that the testimony of the two non-party expert witnesses as to that same matter was merely cumulative and, thus, was unnecessary. We disagree, in part because Dr. Geer was the defendant, which could make his testimony less convincing to a jury. Additionally, it lies within the discretion of the trial court to exclude testimony that it finds to be cumulative or repetitive of other testimony. Tennessee Rule of Evidence 403; *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 74 (Tenn. Ct. App. 1990); *Miglin v. Miglin,* 01-A-01-9707-CH00362, 1998 WL 440724 (Tenn. Ct. App. Aug. 5, 1998).

Having closely read the testimony of Dr. Lederman and Nurse Purdom, we conclude that their specialized knowledge of operating room procedures, including the reasons for those procedures, "substantially assisted" the jury to understand critical information

-9-

necessary for the resolution of this case. Thus, the trial court's decision to admit that testimony was consistent with the requirements of Tennessee Rule of Evidence 702, and the trial court did not abuse its discretion by allowing the jury to hear it.

## V. THE LAW OF THE CASE

Ms. Deuel also argues that the proceedings in the trial court were not conducted in accordance with the law of the case because the defendant was allowed to rely on the nurse's erroneous sponge count in the face of a contrary determination in *Deuel 1.* Her argument hinges on a single sentence from that opinion: "We cannot accept Dr. Geer's argument that, in essence, the 'instrumentality' that caused the injury was the sponge *count* rather than the sponge." *Deuel v. Surgical Clinic, PLLC,* 2010 WL 3237297 at *14.

However, this argument ignores the significant holdings that are discussed in detail earlier in this opinion. The quoted language upon which she relies was used in the context of Dr. Geer's argument that Ms. Deuel was not entitled to proceed to trial under a theory of *res ipsa loquitur* because the instrumentality that caused the patient's injury was not under his exclusive control. We concluded that this circumstance did not prevent Ms. Deuel from relying on *res ipsa loquitur*.

However, we in no way implied that Dr. Geer would not be entitled to present evidence about the role of the nurses in causing the patient's injury. To the contrary, we held that he was entitled to establish that his conduct did not violate the applicable standard of care, which must be proved by expert evidence. We stated rather that "[t]he plaintiff is entitled to present to the jury the issue of whether Dr. Geer was in fact negligent, no more, no less." *Deuel v. Surgical Clinic, PLLC,* 2010 WL 3237297 at *20. Dr. Geer was entitled to present evidence to rebut the presumption of negligence on his part. Thus, Ms. Deuel's argument is without merit.

## VI. CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Lorraine Deuel.

_____
PATRICIA J. COTTRELL, JUDGE